**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Lara S. Mehraban**
**Vanessa De Simone**
**Christopher J. Dunnigan**
**John Lehmann**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**100 Pearl Street, Suite 20-100**
**New York, NY  10004-2616**
**(212) 336-0061 (Dunnigan)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                                        **Plaintiff,**<br><br>                -against-<br><br>**MARIO E. RIVERO**<br><br>                                        **Defendant.** | **COMPLAINT**<br><br>**22 Civ. 1360 (        )**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), located at 100 Pearl Street, New York, New York 10004 (New York Regional Office) for its Complaint against Defendant Mario E. Rivero ("Defendant" or "Rivero"), residing at 17 Broad Street, Red Bank, New Jersey 07701, alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      This case involves a scheme whereby Rivero, a former financial advisor, fraudulently misappropriated at least $680,000 from investment accounts that he handled, including accounts owned by elderly and/or disabled investors.

2.      From approximately May 2010 to September 2020, Rivero was employed as a financial advisor for a large financial institution registered with the Commission as a broker-

dealer and investment adviser ("Financial Institution A"). In this role, Rivero handled investment accounts for the owners of advisory accounts ("clients") and the owners of brokerage accounts ("customers").

3.     From approximately September 2020 to June 2021, Rivero was employed as a financial advisor for a different financial institution registered with the Commission as a broker-dealer and investment adviser ("Financial Institution B").

4.     Between at least July 2018 and November 2020 (the "Relevant Period"), Rivero convinced at least five of his clients and customers at Financial Institution A – some of whom over eighty years old and/or disabled – to transfer funds from their investment accounts at Financial Institution A to their own bank accounts and then, from their bank accounts, to entities that Rivero was secretly associated with.

5.     Rivero falsely told his victims that the purpose of these fund transfers was so that he could make various investments on their behalf including, in some instances, investments in the stock market. In reality, Rivero siphoned hundreds of thousands of dollars from the entities that received the investor funds for his own benefit. Rivero never disclosed to his clients and customers that he would personally benefit from the fund transfers.

6.     In total, Rivero fraudulently induced his clients and customers to make at least $680,000 in such transfers.

## **VIOLATIONS**

7.     By virtue of the foregoing conduct and as alleged further herein, the Defendant violated Sections 17(a)(1) and 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1), (2)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1)

and (2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and

80b-6(2)].

8.      Unless the Defendant is restrained and enjoined, he will engage in the acts,

practices, transactions, and courses of business set forth in this Complaint or in acts, practices,

transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9.      The Commission brings this action pursuant to the authority conferred upon it by

Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], Exchange Act Section

21(d) [15 U.S.C. § 78u(d)], and Advisers Act Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d)

and 80b-9(e)].

10.     The Commission seeks a final judgment: (a) permanently enjoining the Defendant

from violating the federal securities laws and rules this Complaint alleges he has violated;

(b) ordering the Defendant to disgorge all ill-gotten gains he received as a result of the violations

alleged here and to pay prejudgment interest thereon; (c) ordering the Defendant to pay a civil

money penalty pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act

Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 809(e)];

and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to Securities Act Section

22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act

Section 214 [15 U.S.C. § 80b-14].

12.     Defendant, directly and indirectly, made use of the means or instrumentalities of

interstate commerce or of the mails in connection with the transactions, acts, practices, and

courses of business alleged herein.

13.    Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15 U.S.C. § 80b-14].  Rivero's residence, as well as several of the alleged victims' residences, are within the District of New Jersey, and certain of the acts, transactions, practices and courses of business alleged herein took place in the District of New Jersey.

## DEFENDANT

14.    **Rivero**, age 38, resides in Red Bank, New Jersey.  Rivero was a registered representative and investment adviser representative of Financial Institution A from May 2010 until September 2020, and of Financial Institution B from September 2020 to June 2021.  Rivero held FINRA series 6, 7, 63 and 68 licenses before being barred by FINRA from associating with any of its member firms in June 2021.

## OTHER RELEVANT ENTITIES

15.    **Company A** is a New Jersey corporation with its principal place of business in Elizabeth, New Jersey.  It is nominally owned by a close relative of Rivero and lists its business purpose as "investment advice."  Company A received some of the misappropriated investor funds and distributed some of those funds to Rivero.  Company A has never been registered with the Commission in any capacity.

16.    **Company B** is a New Jersey corporation with its principal place of business in Elizabeth, New Jersey.  It is nominally owned by a close relative of Rivero.  Company B received some of the misappropriated investor funds and distributed some of those funds to Rivero.

17.    **Company C** is a Florida corporation with its principal place of business in Plantation, Florida.  It is nominally owned by a friend of Rivero.  Company C received some of the misappropriated investor funds and distributed some of those funds to Rivero.

## FACTS

### I.    DEFENDANT ACTED AS A BROKER AND/OR INVESTMENT ADVISER FOR THE ACCOUNTS FROM WHICH HE MISAPPROPRIATED FUNDS

18.    While working for Financial Institution A, Rivero handled multiple brokerage accounts and advisory accounts.  Rivero acted as a broker with respect to the brokerage accounts and an investment adviser with respect to the advisory accounts.

19.    Among other accounts, Rivero handled accounts for Investors A, B, C, D, and E.

20.    Investors A, D and E each held at least one advisory account and one brokerage account at Financial Institution A, which were handled by Rivero.  Investor B, who is a sibling of Investor A, was a joint account holder on Investor A's advisory account.  Investor C, who is also a sibling of Investors A and B, held a brokerage account at Financial Institution A that was handled by Rivero.

21.    As described below, Rivero misappropriated funds from each of these investors, among other possible investors.

22.    In his capacity as a broker for Investors A, C, D and E, Rivero had access to private financial information about their accounts, including the names and personal identifying information of the investors, the accounts' cash positions, and the account numbers.

23.    In his capacity as an investment adviser for Investors A, B, D and E, Rivero also had access to private financial information about their advisory accounts.  Additionally, he provided investment advice to Investors A, B, D and E concerning these advisory accounts.

24.    Investors A, B, D and E, like Rivero's other advisory clients, paid a fee to Financial Institution A in exchange for Rivero's investment advice and his management of their accounts.  Rivero, in turn, was compensated by Financial Institution A based in part on the advisory fees generated from the advisory accounts he managed.

25.    As an investment adviser, Rivero owed his advisory clients, including Investors A, B, D and E, an affirmative fiduciary duty of utmost good faith.  As set forth below, Rivero violated these fiduciary duties by misappropriating funds from Investors A, B, D and E.

## II.    DEFENDANT FRAUDULENTLY MISAPPROPRIATED CLIENTS' AND CUSTOMERS' FUNDS

26.    Rivero used his position as a broker and investment adviser to misappropriate at least $680,000 from his clients and customers.  Rivero's victims included Investors A, B, C, D and E, among possible others.

27.    Rivero carried out his scheme by convincing each of his victims to engage in a series of fund transfers, which ultimately benefited Rivero.  The scheme generally worked as follows:

28.    First, Rivero fraudulently induced the affected clients and customers to transfer funds out of their advisory and/or brokerage accounts at Financial Institution A to their personal bank accounts, which were frequently held at a bank affiliated with Financial Institution A ("Bank A").  Rivero falsely told his victims that the purpose of these transfers was so that he could invest the funds on their behalf, outside of Financial Institution A.  In some cases, Rivero falsely represented that he would invest the victims' funds "in the stock market" on their behalf.

29.    In a significant number of instances, Rivero directed the sale of securities in the victim's brokerage account prior to the transfer of funds from the investment account to the victim's bank account, so that cash would be available to transfer.  Rivero did not disclose to his

victims that the purpose of these securities sales was to facilitate his fraudulent scheme, rather than to execute a legitimate investment strategy.

30.     Second, Rivero directed the victims to obtain cashier's checks from Bank A or, in the case of Investor D, a different bank.  In some instances, Rivero accompanied the victim to a branch office of Bank A to obtain these cashier's checks and spoke to the cashier on the victim's behalf.

31.     Rivero directed the victims to obtain cashier's checks payable to either Company A, Company B or Company C (together, the "Rivero Affiliated Companies").  As described above, each of these companies is affiliated with Rivero: Company A and Company B were created and are owned by a close relative of Rivero, and Company C was created and is owned by a friend of Rivero.

32.     Rivero falsely represented to the affected clients and customers that the payments to the Rivero Affiliated Companies were intended to facilitate legitimate investments.  Rivero did not disclose to any of his victims that, in fact, he was associated with the Rivero Affiliated Companies and they were not legitimate investment vehicles.

33.     During the Relevant Period, Rivero caused Investors A, B, C, D and E to collectively transfer at least $680,000 to the Rivero Affiliated Entities in this manner.

34.     Third, Rivero caused funds to be transferred from bank accounts held by the Rivero Affiliated Companies to his own accounts, including his personal brokerage account, PayPal accounts in his name, and bank accounts that he controlled.  Over scores of separate transactions, Rivero received hundreds of thousands of dollars in illicit funds from the Rivero Affiliated Companies.

35.     Rivero repeated this pattern of fund transfers more than a dozen times during the Relevant Period.  At the time of the fraudulent transfers, Rivero did not disclose to the affected clients and customers that a substantial portion of their investment funds would ultimately flow to him.  Likewise, Rivero did not disclose to the clients and customers that he had received a substantial portion of their investment funds after these transfers took place.

36.     None of the affected clients and customers would have authorized transactions described above – including the initial withdrawal of funds from their investment accounts and the issuance of cashier's checks to the Rivero Affiliated Companies – if they had known the true purpose of these transactions and the personal financial benefit that Rivero derived from them.

## III.    DEFENDANT'S FRAUDULENT TRANSFERS FROM INVESTORS A AND B

37.     Rivero's conduct with respect to Investors A and B is illustrative of this deceptive scheme.  Investor A, age 86, resides with her two siblings, Investor B, age 93, and Investor C, age 83.  Investor B suffers from a memory impairment.  Over time, Rivero developed a close personal relationship with Investors A, B and C, even spending certain holidays with them. Despite this close relationship, Rivero repeatedly defrauded Investors A, B and C for his own personal gain.

38.     As an example of Rivero's fraud with respect to Investors A and B, on September 10, 2019, Rivero sold various mutual fund shares from an advisory account that was jointly held by Investors A and B (the "Joint Investment Account") for proceeds of approximately $27,000.

39.     On September 12, 2019, Rivero caused a nearly identical amount, $27,008, to be transferred from the Joint Investment Account to a bank account at Bank A also jointly owned by Investors A and B.  On September 18, 2019, Rivero directed Investor A to obtain a cashier's check in the amount of $30,000 from Bank A, payable to Company A.  Rivero told Investor that the purpose of the check was so that he could invest in the funds in the stock market on her and Investor B's behalf.  Investor A was not familiar with Company A at the time, and did not know that it was affiliated with Rivero or his close relative.

40.     Investor A and B's check was deposited in Company A's bank account on September 19, 2019.  In the days that followed, Company made numerous payments that benefited Rivero including, but not limited to, $13,900 in transfers to a checking account jointly owned by Rivero and one of his relatives, made between September 20, 2019 and September 24, 2019.  $2,000 in cash was also withdrawn from the account on September 23, 2019.

41.     In or around December 2020, Rivero provided Investor A with a fake account statement for a purported brokerage account in her and Investor B's names, reflecting that he had invested the funds in the stock market on their behalf.  This brokerage account does not exist.

42.     Rivero never disclosed to Investors A or B that he would personally benefit from this series of transactions, and Investors A and B would not have made or authorized any of these transactions but for Rivero's deception.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Sections 17(a)(1) and 17(a)(2)**

43.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 42.

44.     Rivero, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate

commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud and (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which he were made, not misleading.

45.    By reason of the foregoing, Rivero, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and 17(a)(2) [15 U.S.C. § 77q(a)(1), (2)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

46.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 42.

47.    Rivero, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which he were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

48.    By reason of the foregoing, Rivero, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
### Violations of Advisers Act Sections 206(1) and 206(2)

49.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 21 and 23 through 42.

50.     At all relevant times, Rivero was an investment adviser under Advisers Act Section 202(11) [15 U.S.C. § 80b-2(11)].

51.     Rivero, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly has: (i) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud any client or prospective client, and/or (ii) knowingly, recklessly, or negligently engaged in one or more transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon any client or prospective client.

52.     By reason of the foregoing, Rivero, directly or indirectly, has violated and, unless enjoined, will again violate Advisers Act Sections 206(1) and 206(2) [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Rivero and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Sections 17(a)(1) and 17(a)(2) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and (2) of the Advisers Act;

**II.**

Ordering Rivero to disgorge all ill-gotten gains he received, directly or indirectly, with

pre-judgment interest thereon, as a result of the alleged violations;

**III.**

Ordering Rivero to pay civil monetary penalties under Securities Act Section 20(d)

[15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers

Act Section 209(e) [15 U.S.C. § 80b-9(e)]; and

**VIII.**

Granting any other and further relief this Court may deem just and proper.


Dated: New York, New York
March 11, 2022

*Richard R. Best*

RICHARD R. BEST
REGIONAL DIRECTOR
Lara S. Mehraban
Vanessa De Simone
Christopher J. Dunnigan
John Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0061 (Dunnigan)
dunnigancj@sec.gov

# LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged against the

Defendant in the foregoing Complaint is not the subject of any other civil action pending in any

court, or of any pending arbitration or administrative proceeding, with the exception of a possible

administrative order to be issued be the New Jersey Bureau of Securities regarding Mario E.

Rivero based on certain of the facts alleged in the Complaint.

*Christopher J. Dunnigan*

CHRISTOPHER J. DUNNIGAN
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
Brookfield Place
100 Pearl Street, Suite 20-100
New York, NY  10004-2616
(212) 336-0061 (Dunnigan)
Email:  dunnigancj@sec.gov

Of Counsel:
Richard R. Best
Lara S. Mehraban
Vanessa De Simone
John Lehmann

## DESIGNATION OF AGENT FOR SERVICE

Pursuant to Local Civil Rule 101.1(f), the undersigned hereby designates the United

States Attorney's Office for the District of New Jersey to receive service of all notices or papers

in this action at the following address:

> David E. Dauenheimer
> United States Attorney's Office
> Deputy Chief, Government Fraud Unit
> District of New Jersey
> 970 Broad Street, Suite 700
> Newark, NJ 07102

> SECURITIES AND EXCHANGE COMMISSION
>
> *Christopher J. Dunnigan*
> _____
> CHRISTOPHER J. DUNNIGAN
> Attorney for Plaintiff
> 100 Pearl Street, Suite 20-100
> New York, NY  10004-2616
> (212) 336-0061(Dunnigan)
> dunnigancj@sec.gov

Of Counsel:
Richard R. Best
Lara S. Mehraban
Vanessa De Simone
John Lehmann